# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

|  |  |
|---|---|
| NEODRON LTD., | |
| **Plaintiff,** | Civil Action No. 1:19-cv-00903-ADA |
| vs. | |
| SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC, | |
| **Defendants.** | |

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION FOR A STAY PENDING FINAL DISPOSITION OF RELATED PROCEEDINGS BEFORE THE UNITED STATES INTERNATIONAL TRADE COMMISSION**

## TABLE OF CONTENTS

**Page**

A.    There Is No Question That A Stay Will Simplify The Issues And Trial .............. 1

B.    Neodron Identifies No Prejudice Or Clear Tactical Disadvantage ....................... 4

C.    Hardship To Samsung Clearly Favors A Stay ....................................................... 4

D.    Discovery Has Not Yet Started And A Trial Date Has Not Yet Been Set ........... 5

E.    Conclusion ............................................................................................................. 5

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Align Tech, Inc. v. 3Shape A/S*,
2018 WL 4292675 (D. Del. Sept. 7, 2018) ................................................................ 2

*Am. Honda Motor Co., Inc. v. Coast Distrib. Sys., Inc.*,
2007 WL 672521 (N.D. Cal. Feb. 26, 2007) ............................................................. 2

*Black Hills Media, LLC v. Samsung Elec. Co., Ltd., et al.*,
No. 2:13-cv-379-JRG-RSP (E.D. Tex. Mar. 17, 2014) ............................................ 5

*Broadcom Corp. v. Qualcomm Inc.*,
2005 WL 8161480 (C.D. Cal. Aug. 16, 2005) ......................................................... 3

*Draeger Med. Sys., Inc. v. Atom Med. Int'l, Inc.*,
2013 WL 12152403 (M.D. Fla. Oct. 22, 2013) ....................................................... 4

*Flexsys Am., LP v. Kumho Tire, U.S.A., Inc., et al.*,
No. 5:05-cv-156 (N.D. Ohio Apr. 29, 2005) ........................................................... 2

*FormFactor, Inc. v. Micronics Japan Co., Ltd.*,
2008 WL 361128 (N.D. Cal. Feb. 11, 2008) ........................................................... 5

*Humanscale Corp. v. CompX Int'l Inc.*,
2009 WL 1444312 (E.D. Va. May 21, 2009) ........................................................... 4

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ................................................................................................. 5

*Omega Eng'g, Inc., v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) .............................................................................. 1

*SanDisk Corp. v. Phison Elecs. Corp.*,
538 F. Supp. 2d 1060 (W.D. Wis. 2008) .............................................................. 3, 4

*SZ DJI Tech. Co., Ltd., et al. v. Autel Robotics USA LLC, et al.*,
No. 16-706-LPS (D. Del. Mar. 18, 2019) ................................................................ 3

*YETI Coolers, LLC v. ContextLogic, Inc.*,
No. 1:17-cv-00937-RP (W.D. Tex. Dec. 15, 2017) ................................................. 5

*YETI Coolers, LLC v. Home Depot U.S.A., Inc.*,
2018 WL 2122868 (W.D. Tex. Jan. 8, 2018) ........................................................... 4

Making only vague and general arguments regarding alleged differences between the WDTX II and ITC patents, Neodron argues there are no efficiencies or simplification of issues to be gained from a stay.  Neodron is wrong.  Neodron does not even address, let alone rebut, the potential for inconsistent determinations, or the possible estoppel arising from the overlap of claims and claim terms noted in Samsung's motion.  Neodron's argument that the two matters involve discovery of different components is similarly proven false by its own actions in the ITC, where it seeks extensive discovery of the same components it now argues are only at issue in this WDTX II case.  Faced with Samsung's motion, and in an effort to avoid a stay, Neodron added three new patents to this case.  But these patents are directed to the same components and features at issue in the ITC and, therefore, do not change the analysis.  A stay is, thus, plainly warranted.

A.      <u>There Is No Question That A Stay Will Simplify The Issues And Trial</u>

The core of Neodron's argument is that the ITC and WDTX II Patents are "completely different."  This is demonstrably false.  Neodron implicitly concedes that two of the WDTX II Patents, the '286 and'547 Patents, are directed to the same subject matter as the ITC '790 and '173 Patents, which are in the same patent families, *i.e.*, "the processing of touch signals at the operating system and application level." Dkt. 29 at 1, 4.  Indeed, Neodron does not even address the striking similarities between the claims and overlap of claim terms in these patents.  *See* Dkt. 18 at 5-6.  As these patents share common claim language and prosecution histories, many common legal issues, such as claim construction, infringement, and prior art disclosure of shared claim terms, as well as evaluating potential disclaimers, and prosecution history estoppel, will inevitably overlap between the two cases.  *See, e.g.*, *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003).

The remaining five WDTX II Patents are likewise far from "completely different" than the ITC Patents.  The three new WDTX II Patents, as well as the WDTX II '009 and '898 Patents, all relate to the drive/sense lines in a touch sensor and the signals sent and received over these lines

1

to detect a touch.  *See* Dkt. 24, Exs. 3, 5, 9, 11, 13.[1]  This is precisely what is claimed in the ITC '580 Patent.  *See, e.g.*, Dkt. 18-2, Ex. 4, Claim 1 ("sending … signals to … lines of a touch sensor[,] receiving … signals on … lines of the touch sensor[,] and determining whether a touch occurred").

Contrary to Neodron's assertion that any ITC findings are unlikely to simplify the issues in this case due to their non-binding nature, this Court would still "benefit tremendously from a narrowing" of issues, particularly as the ITC action, if litigated to final resolution, would give rise to estoppel, limiting the issues to be litigated in this case.  *See Flexsys Am., LP v. Kumho Tire, U.S.A., Inc., et al.*, No. 5:05-cv-156 (N.D. Ohio Apr. 29, 2005).  For example, if the ITC finally determines that the analysis to determine an active key in the accused products is not "biased in favor of the first key," as required by the claims of the ITC '790 Patent, Neodron will be estopped from arguing that those products satisfy this same core limitation in the related WDTX II '286 Patent.  *See* Dkt. 18 at 6.  Further, a stay avoids the inevitable risk of inconsistent rulings on common issues (*e.g.*, constructions of common or closely related claim terms).  Dkt. 18 at 8.

Neodron's argument that courts "consistently reject" stays of cases involving related patents is incorrect and grossly mischaracterizes the cases it cites.  For example, in *Align Tech., Inc. v. 3Shape A/S*, the court specifically relied on the fact that "none of the [ITC patents] share a common specification, prosecution history, or parent/child relationship with any patent at issue in the [district court]."  2018 WL 4292675, at *2 (D. Del. Sept. 7, 2018); *see also Am. Honda Motor*

---

[1] The '898 Patent is directed to sending "signals" to "lines" of "a touch sensor" (Dkt. 24, Ex. 5, 3:58-4:21, Claim 1), the '009 Patent is directed to "acquiring" "touch presence and location" "via signals" from "lines" of a "touch sensor" (*id.*, Ex. 3, Abstract, 1:13-15, Claims 1-4), the '747 Patent is directed to "a capacitive touch sensing panel comprising … a plurality of drive electrodes or sense electrodes" (*id.*, Ex. 11, Claim 1), the '502 Patent is directed to "sensing cells arranged in columns and rows" "for determining the position" of a touch (*id.*, Ex. 9, 1:5-7, Claim 1), and the '106 Patent is directed to "a touch sensor comprising a plurality of electrodes" where some "electrodes extend[] generally in a first direction" and others "extend[] generally in a second direction" (*id.*, Ex. 13, Claim 1).

*Co., Inc. v. Coast Distrib. Sys., Inc.*, 2007 WL 672521, at *2 (N.D. Cal. Feb. 26, 2007) (noting the patents related to "different portions and pieces of the engine").  In sharp contrast, here, not only are patents related to (*i.e.*, in the same patent family as) those in the ITC, there is a significant overlap in claimed subject matter.  Dkt. 18 at 5-7.  Likewise, Neodron relies heavily on *Broadcom Corp. v. Qualcomm Inc.*, 2005 WL 8161480 (C.D. Cal. Aug. 16, 2005).  However, that case, unlike the present one, involved direct competitors and an "enormous" field of technology.  *Id.*

Neodron's arguments that the WDTX II Patents implicate different products and components, and thus require different discovery, are contradicted by Neodron's own actions.  For example, Neodron states this case will involve discovery relating to "***touch controllers*** and touch sensors/display used in Samsung products," which it argues will not be at issue in the ITC action.  Dkt. 29 at 1, 3.  However, in the ITC action, Neodron seeks discovery (including from third parties) of Samsung's touch controllers and touch sensor displays.  For example, in the ITC action, Neodron is seeking discovery of detailed technical information regarding the "***Touch Controllers***" supplied to Samsung by third parties Synaptics, STMicroelectronics and Elan.  Exs. B-D.  Thus, like the patents, the overlap of issues relating to the accused products and components is extensive.

Neodron's offer of a cross-use agreement only emphasizes the relatedness and the duplication of effort between the two proceedings.  And any efficiency to be gained from utilizing a cross-use agreement does not weigh against a stay.  Having discovery run in parallel, even with a cross-use agreement, is likely to result in inefficiencies, unnecessarily burdening the parties and witnesses.  *SanDisk Corp. v. Phison Elecs. Corp.*, 538 F. Supp. 2d 1060, 1066 (W.D. Wis. 2008) (noting that even with a "cross-use" agreement, "the burden on defendants and the court would not disappear, as many issues would likely still be litigated twice"); *see also SZ DJI Tech. Co., Ltd., et al. v. Autel Robotics USA LLC, et al.*, No. 16-706-LPS (D. Del. Mar. 18, 2019) (finding a

3

"cross-use agreement" "do[es] not eliminate such likely simplification").  Further, a cross-use agreement will do nothing to reduce the risk of inconsistent legal and factual determinations.

**B.    Neodron Identifies No Prejudice Or Clear Tactical Disadvantage**

Neodron's vague and general assertions that it will be prejudiced fall far short.  The alleged prejudice Neodron identifies is speculative and nothing more than what ***may*** result from ***any*** stay. Neodron points to no document or witness testimony at risk of being lost, nor does it identify any third-parties for which a stay may present a problem, let alone any from which discovery is not already being sought in the ITC.  Accordingly, courts regularly reject such generic and unsupported claims of prejudice.  *See, e.g.*, *SanDisk*, 538 F. Supp. 2d at 1067.

Neodron argues that courts "routinely" deny stays pending ITC investigations due to the "inevitable prejudice."  Dkt. 29 at 7.  However, as demonstrated by Neodron's own cites, these cases typically involve direct competitors, where the prejudice extends into the market.  *See, e.g., Humanscale*, 2009 WL 1444312, at *3 ("granting a stay will provide [the alleged infringer] with a competitive advantage"); *Draeger*, 2013 WL 12152403, at *2 (citing *Humanscale*).  Putting aside Neodron's generic arguments, and the fact that it does not practice the patents, Neodron is able to obtain relief in the ITC as Neodron is seeking an exclusion order against the same products it is accusing of infringement in the WDTX II action.  Such an exclusion order, if Neodron is successful, will take effect before any judgment would be obtained in this case, even absent a stay.

**C.    Hardship To Samsung Clearly Favors A Stay**

Neodron suggests that Samsung applied the wrong legal standard because Samsung's cited case relates to patent reexamination, not an ITC patent investigation.  Dkt. 29 at 4.  But Neodron does not explain why this distinction requires a different standard, particularly since the case on which it relies does not involve patents.  *YETI Coolers, LLC v. Home Depot U.S.A., Inc.*, 2018 WL 2122868, at *1 (W.D. Tex. Jan. 8, 2018) (claims of "trade dress infringement, unfair competition,

false designation of origin, trade dress dilution, and unjust enrichment"). The test as articulated by Samsung has been repeatedly applied and is appropriate. *See, e.g., Black Hills Media, LLC v. Samsung Elec. Co., Ltd., et al.*, No. 2:13-cv-379-JRG-RSP (E.D. Tex. Mar. 17, 2014).

Regardless of how the legal test is articulated, Neodron's argument fails. Neodron argues that Samsung must show "hardship and inequity" to be entitled to a stay. *See* Dkt. 29 at 9-10. But Neodron's statement of the law is incomplete. As the Supreme Court has made clear, a showing of hardship and inequity is required ***if*** there is a risk that the stay "will work damage to some one else." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Neodron has made no such showing.

Nonetheless, Samsung has already established the "hardship and inequity" if these matters proceed simultaneously. *See* Dkt. 18 at 9-10. Samsung will be forced to proceed with, and incur the costs of, two sets of closely-related fact discovery, claim construction, and expert discovery. For example, because the same products and technologies are at issue in both actions, the same engineers will likely be witnesses in both cases. *FormFactor*, *Inc. v. Micronics Japan Co., Ltd.*, 2008 WL 361128 (N.D. Cal. Feb. 11, 2008) (granting a stay based on the hardship of conducting multiple depositions of the same witness); *see also YETI Coolers, LLC v. ContextLogic, Inc.*, No. 1:17-cv-00937-RP (W.D. Tex. Dec. 15, 2017). Accordingly, permitting these actions to proceed in parallel would result in needless duplication of effort and expense for Samsung.

### D.  Discovery Has Not Yet Started And A Trial Date Has Not Yet Been Set

Samsung's response to the complaint is now not due until November 28 and the Case Management Conference has been set for December 20. Neodron wholly fails to address the case status anywhere in its opposition, and does not dispute its infancy. This heavily favors of stay.

### E.  Conclusion

For the foregoing reasons, Samsung respectfully requests that the Court stay this action until the resolution of the ITC Investigation between Neodron and Samsung, including appeals.

Dated:  September 20, 2019            Respectfully submitted,

*/s/ Marc J. Pensabene*
Ryan K. Yagura (Tex. Bar No. 24075933)
ryagura@omm.com
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

Marc J. Pensabene (N.Y. Bar No. 2656361)
mpensabene@omm.com
O'MELVENY & MYERS LLP
Times Square Tower, 7 Times Square
New York, NY 10036
Telephone: 212-326-2000
Facsimile: 212-326-2061

John C. Kappos
jkappos@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Telephone: 949-823-6900
Facsimile: 949-823-6994

Darin Snyder
dsnyder@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

*Counsel for Samsung Electronics, Co., Ltd. and
Samsung Electronics America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(b)(1) on September 20, 2019.

*/s/ Marc J. Pensabene*